## THE GOWANUS.

(District Court, E. D. New York. November 16, 1920.)

**Collision ⟵95(7)—Both tug and ferry held at fault for collision between tow and ferry.**

On libel to recover damages from a collision between a barge in tow and a ferryboat, where the tow and ferry were meeting on substantially parallel courses, the tug *held* at fault for attempting to cross the bows of the ferryboat when it was too late for such maneuver, and the ferryboat *held* at fault for approaching too close to the tug without agreement for passing arranged by whistles.

In Admiralty. Libel by the Undercliff Terminal & Warehouse Company against the ferryboat Gowanus, in which the City of New York was impleaded. Decree rendered for libelant, against both respondents.

Henry A. Rubino and Finis E. Montgomery, both of New York City, for libelant.

John P. O'Brien and Mr. Carroll, both of New York City, for respondent.

CHATFIELD, District Judge. The pleadings in this case set forth situations which are exactly like those now stated by the captains of the two boats, and which make out two different stories, both of which contain impossible elements.

The accident happened on February 18, 1916, so that the witnesses are going back over four years in their recollection. Both captains have reconstructed the positions and the situation of the boats, so as to explain the matter as laid out in the pleadings, and, as usual, the facts appear to make out a probable situation rather than either one of the impossible situations which they claim.

In the first place, this accident happened in broad daylight. The boats were at no time at which they had anything to do with the movements of each other more than 1,000 feet apart. There was no pressing circumstance affecting the handling of either boat. The Taylor,

which had two barges on her port side and one on her starboard side, having come down the Hudson river, had gone across below Governors Island on a course which would bring her into the Red Hook Channel on her way to Pier 4 of the Bush Terminal. This necessitated a passage down Red Hook Channel for a distance of 2,000 or 3,000 feet. The ferryboat, which had come out from the Thirty-Ninth street ferry slip, Brooklyn, had approached the Red Hook Channel from the southeast on a course which would necessitate her passing through the Red Hook Channel in a position which is not only the customary route of the ferryboats, but is a compass course, as I know from the many matters which have been disposed of in other cases. The course of the ferryboats is thus a matter of habit, and is followed with very slight deviation. This would take the ferryboat on a course parallel to that of the Taylor, but in an opposite direction, for the 2,000 or 3,000 feet up and down the Red Hook Channel. The courses of both boats would thus be parallel to the bulkhead wall of the Erie Basin, and the captains of both boats agree that they were proceeding parallel to that wall.

The captain of the ferryboat saw the Taylor coming across and turning into the Red Hook Channel, and assumed that she was bound for the Erie Basin. No confusion was caused by the fact that she was at least as far over as the center of this channel, or on the port side of mid-channel, and the ferryboat intended to go up the channel and pass the Taylor starboard to starboard.

The captain of the Taylor, on the other hand, saw that the ferryboat was turning into the Red Hook Channel, and that she was apparently passing by, so as to pass the Taylor, either starboard to starboard, or port to port, as she might proceed to the point of meeting.

Neither of them indicated by any whistle signal the course that they intended to follow until they were comparatively close together. There is no dispute that two vessels, one of which was the Dolphin, or a destroyer, passed down the Buttermilk Channel, one on each side of the Taylor and went by the ferryboat port to port. Apparently the ferryboat had not yet reached a position where it was necessary for her to signal the naval vessels, nor for the naval vessels to signal her. In fact, the ferryboat either gave way to the naval vessels, or so directed her course that the naval vessels went across her bow without difficulty, and actually passed her on port to port courses.

There appears to have been a tow coming around the lower point of the Erie Basin and close enough to the Brooklyn shore to make it difficult for the Taylor to go down on the inside of the ferryboat.

The captain of the Taylor testifies that, when he saw that the ferryboat was proceeding, as he thought under a port helm, to pass astern of the naval tug, and when he realized that the situation was close enough to make some signal necessary, he decided to blow a one-whistle signal and attempt to pass outside of the ferryboat; that is, port to port, according to the rules. Both captains agree that this one-whistle signal was given, and it appeared that the boats at the time were but a few hundred feet apart; the ferryboat fixing the distance

at 600 or 700 feet, and the Taylor fixing it less. The result would indicate that the boats were closer together than 600 or 700 feet.

The Taylor did, under this one-whistle signal, port her helm and attempt to move out. The ferryboat apparently made no change of helm, but blew three whistles, reversed, and attempted to stop.

There is nothing to indicate that this of itself was any wrong maneuver on the part of the ferryboat, as the vessels were apparently too close for any change of course at that time. The boats came together with the port forward corner of the outside port barge in the tow of the Taylor striking on the starboard side of the front of the ferryboat. The momentum of the ferryboat caused the vessels to crash further together, with the deck or overhang of the ferryboat riding over and across the barge, which thus was carried far enough aft on the ferryboat to damage the superstructure on the starboard side of the ferryboat, while the injury inflicted by the ferryboat to the barge was just aft of the port forward corner, as testified to by Mr. Bushey.

That explains the location of the injuries, and makes it apparent that the accident could not have happened as the captain of the Taylor describes it; for his story is that the ferryboat executed a letter S maneuver and struck the barge a blow which could have been inflicted only by a boat that was overtaking the barge, instead of her meeting head on.

The captain of the ferryboat has described the way the boats came together, and there seems to be no reason now to doubt that the blow occurred as he said, with the exception that apparently the boats were not on as much crossing courses as he would indicate.

Both witnesses have attempted to place their boats at the extreme position according to their own stories. It would appear that the Taylor was not as far inshore as the captain of the Gowanus places her, because it would have been a physical impossibility for the Taylor to have made the turn and covered the distance in the time which elapsed, if she had been that much closer to the Brooklyn shore. Besides, if she had been in that position, the ferryboat could have run around her, and I am satisfied that no captain woud have blown a reverse whistle and attempted to stop, if he had had clear water ahead of him and on his port hand, when given a signal by a heavily laden tow working against the tide, which was 200 feet or more to the starboard of his course.

I shall find, therefore, that the vessels were on courses substantially not far apart; that the Taylor was misled by the movements of the naval tug and of the ferryboat, when viewed in conjunction with the presence of the tow coming around the Erie Basin, and that she then attempted to cross the bow of the ferryboat and to indicate her desires by one-whistle signal. Her captain should have realized that it was too late to do so, and was negligent.

On the other hand, I think that the captain of the Gowanus was misled by the idea that the Taylor was going into the Erie Basin, or was intending to round the corner of the Erie Basin, to go into the Gowanus Creek, and that he held his course and indicated no whistle

signal until he was too close to the tow of the Taylor to maneuver safely at the speed at which he was going with the tide.

Therefore, both captains were at fault for the situation in which they found themselves, and responsibility should be divided.

I will divide the damage between the ferryboat and the Taylor. The libelant may recover for the barge.